UNITED STATES DISTRICT COURT
SOUNTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

     - v. -                                    :          09 Cr. 1003 (SHS)

STEVEN FORTUNA,                   :

     Defendant.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S SUBMISSION
# PURSUANT TO SECTION 5K1.1 OF THE GUIDELINES


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
     of America.


ANTONIA M. APPS
Assistant United States Attorney

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 4, 2013

BY HAND AND REQUEST TO BE FILED UNDER SEAL

The Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

>       Re:    United States v. Steven Fortuna,
>              09 Cr. 1003 (SHS)

Dear Judge Stein:

      The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that Steven Fortuna has rendered in the investigation of others. In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a) of the Guidelines.

## I. Background

      In or about early 2008, in connection with the Government's investigation of insider trading of the Galleon hedge fund and related individuals and entities, the Government intercepted wiretap calls between Fortuna and various other subjects of its investigation. At the time, Fortuna was a portfolio manager at a hedge fund he had co-founded, S2 Capital LLC ("S2").

      On April 1, 2009, the FBI approached Fortuna seeking his cooperation. Within a few weeks, after retaining counsel, Fortuna agreed to meet with the Government. In his initial proffers, Fortuna acknowledged engaging in insider trading with a number of other individuals. Additionally, Fortuna consented to making recordings of conversations with his former coconspirators and others at the direction of the FBI, gathering evidence that would prove critical in a number of the Government's ongoing investigations.

### A. Fortuna's Personal Background

Fortuna graduated from Columbia Business School in 1993. He spent the next 20-plus years working as a sell-side analyst covering technology companies for a number of different investment firms, including Paine Webber, Merrill Lynch, and Prudential Equity Group. In 2006, Fortuna joined Stratix Asset Management, a now-defunct hedge fund that closed in 2007. In or about 2008, Fortuna and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, formed their own hedge fund, S2, which launched in June 2008 with approximately $125 million in assets under management. Fortuna managed the trading in technology stocks, while his partner managed trading in oil and energy stocks.

### B. Fortuna's Criminal Conduct

#### 1. Insider Trading Conspiracy with Danielle Chiesi

In July and August 2008, Fortuna obtained inside information about various technology companies from Danielle Chiesi, a portfolio manager at a hedge fund called New Castle Partners. For example, on July 25, 208, Chiesi informed Fortuna that she had learned from an inside source at Akamai, Inc. ("Akamai") that Akamai would report that its revenue guidance for the following quarter would miss expectations and that, internally, the company believed that its stock price would fall following the quarterly earnings announcement. That day, Fortuna caused S2 to sell short shares of Akamai stock and to purchase put-option contracts in Akamai. Following Akamai's quarterly earnings announcement in which its revenue guidance fell short of analyst expectations, Akamai's stock price fell by approximately 20 percent, and Fortuna made approximately $2.4 million in profits for his hedge fund S2.

Beginning in August 2008, Chiesi provided Fortuna with inside information concerning the confidential plans of Advanced Micro Devices, Inc. ("AMD"), a chip manufacturer, to spin off its manufacturing operations into a separate entity. Fortuna caused S2 to purchase shares of AMD based on this inside information. The restructuring was announced on October 7, 2008, causing AMD's share price to rise. However, S2 ultimately lost money on its AMD trades because S2 had begun to acquire the AMD shares in August 2008, shortly before the global financial crisis caused broad declines in the stock market.

#### 2. Other Insider Trading Conspiracies

Fortuna also obtained inside information regarding certain technology companies from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These individuals provided inside information to Fortuna because they were friends, and to obtain Fortuna's advice on trading certain technology stocks.



The Honorable Sidney H. Stein
February 4, 2013
Page 3



### C. Fortuna's Guilty Plea

On October 20, 2009, Fortuna pled guilty to a four-count Information before Your Honor. Counts One through Three each charged Fortuna with conspiring with others to commit securities fraud, in violation of Title 18 United States Code, Section 371, in connection with the insider trading schemes with Chiesi, ▮▮▮▮▮▮▮▮▮▮ respectively. Count Four charged Fortuna with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2, in connection with insider trading in Akamai shares. Counts One through Three each carries a maximum sentence of five years' imprisonment, and Count Four carries a maximum sentence of 20 years' imprisonment.

## II. Fortuna's Cooperation

As described more fully below, Fortuna's cooperation has been substantial. Moreover, Fortuna agreed to cooperate shortly after he was approached by the FBI and offered the opportunity to cooperate. Within two weeks, Fortuna met with prosecutors and was fully debriefed as to his criminal conduct and that of others. Additionally, Fortuna immediately started to work proactively with FBI agents, engaging in dozens of consensually recorded conversations on a weekly basis. All told, over a 6-month period of proactive, covert cooperation, Fortuna recorded over 400 conversations (or attempted conversations) made at the direction of the FBI with six subjects of the Government's insider trading investigations, including Chiesi. Further, throughout his cooperation, Fortuna has proved to be forthright, honest, and he has accepted responsibility for his past criminal conduct. His statements have been corroborated by wiretap recordings, toll records, trading records, and other documentary evidence.

Fortuna's cooperation, in the Government's view, has directly led to the convictions by guilty pleas of two individuals, Chiesi and Moffat, and he has substantially assisted the Government in other ongoing investigations:

### 1. Danielle Chiesi

Based in part on information provided by Steven Fortuna, including audio recordings made by Fortuna at the direction of the FBI, the Government developed a strong insider trading case against Chiesi. In particular, although the Government had certain information about Chiesi's inside sources at AMD and Akamai based on other wiretap evidence, Fortuna provided important details and context, as well as the length of time that Chiesi was obtaining the inside information, that significantly strengthened the Government's case against Chiesi. Additionally, Fortuna obtained consensually recorded calls from periods when the Government did not have a

The Honorable Sidney H. Stein
February 4, 2013
Page 4

Court-authorized wiretap. Fortuna's statements to the FBI, and his consensually recorded calls with Chiesi provided significant, additional information about Chiesi's sources (including Moffat) and her involvement in a broader insider trading scheme, which involved providing inside information to Raj Rajaratnam as well as Fortuna. On January 19, 2011, Chiesi pled guilty before the Honorable Richard J. Holwell to three counts of conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371, which collectively carried a maximum term of 15 years' imprisonment. On July 20, 2011, Chiesi was sentenced to 30 months' imprisonment, to be followed by two years of supervised release, and a $25,000 fine. *See United States* v. *Danielle Chiesi*, 09 Cr. 1184 (RJH).

### 2. Robert Moffat

As set forth above, Robert Moffat was a corporate executive at IBM who provided Chiesi with inside information concerning AMD and IBM. Based in part on Fortuna's information and consensually recorded calls between Chiesi and Fortuna, the Government developed a strong insider trading case against Moffat. On March 29, 2010, Moffat pled guilty before the Honorable Deborah A. Batts to a two-count Information charging Moffat with conspiracy to commit insider trading with Chiesi from August 2008 to October 20008, in violation of Title 18, United States Code, Section 371, and substantive securities fraud based on providing inside information about AMD to Chiesi, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section Two. These charges together carried a maximum sentence of 25 years' imprisonment. On September 13, 2010, Moffat was sentenced to six months' imprisonment, to be followed by two years' supervised release, and was ordered to pay a fine of $50,000. *See United States* v. *Robert Moffat*, 10 Cr. 270 (DAB).

### 3. Ongoing Investigations



The Honorable Sidney H. Stein
February 4, 2013
Page 5

### III. Conclusion

As described in detail above, Fortuna's assistance contributed significantly to the convictions of two individuals who subsequently pled guilty to insider trading crimes, Danielle Chiesi and Robert Moffat. While Fortuna did not need to testify in connection with these matters, Fortuna would have been available to do so had those individuals instead elected to go to trial. Additionally, Fortuna engaged in hundreds of consensually recorded calls and meetings with subjects at the direction of the FBI, and has substantially assisted the Government in a number of other ongoing insider trading investigations.

It should also be emphasized that Fortuna quickly agreed to cooperate with the Government, providing the full extent of his involvement in insider trading, which exceeded what the FBI and this Office knew at the time he was approached, and engaging in extensive proactive cooperation. Further, from the outset, Fortuna did not minimize his own involvement or the involvement of others; and he has repeatedly acknowledged that he made mistakes in the past and he was prepared to accept the consequences of his illegal conduct.

While the individuals against whom Fortuna cooperated were not dangerous and did not pose any risk of physical harm to Fortuna or his family, Fortuna incurred significant financial and reputational harm as a result of his cooperation. Further, his cooperation was made all the more difficult for him on a personal level because he was repeatedly asked to make consensual recordings with former friends and colleagues.

In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to request at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence Fortuna in light of the factors set forth in Section 5K1.1 of the Guidelines.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Antonia M. Apps
Assistant United States Attorney
(212) 637-2198

cc:     Francis J. DiMento, Esq. (By e-mail)